Nelsok, J.,
delivered the opinion of the Court.
On or about the 3d of Dec., 1843, Manson M. Brien purchased of Cicero B. Duncan, executor of the last will and testament of Thos. W. Duncan, he having full power and authority under the will to make the sale, four several tracts of land in DeKalb county, described in the pleadings, and containing about five hundred acres. Duncan, the executor, executed to Brien a title bond binding himself to convey when the purchase money should be paid. Brien afterwards sold the land to B. *536 F. Browning, for whom he, probably, made the purchase, and executed to him a similar title bond. The purchase money was fully paid by Browning to Brien, and by Brien to the executor, and the parties had it in contemplation that a deed should be executed from the executor, directly, to Browning, but this was prevented by the death of Browning, which occurred between the date of his will, 17th of November, 1846, and the time •of its probate, 4th of January, 1847. Browning was an unnaturalized foreigner. He died without heirs, but-left a widow, Lucinda, who, having dissented from his will, filed a petition for dower, in the Circuit Court of DeKalb, on the 5th of February, 1848, and obtained a decree on the 7th of October, 1848, assigning her as dower, one hundred acres, with the mansion house. The costs of the application for dower, amounting to $47.62¿, were adjudged against her, and execution issued therefor on the 22d of November, 1848. No personal property being found, the execution was levied 22d of November, 1848, on the dower tract, which was sold, at public sale, 5th of February, 1849, and purchased by A. M. Savage, at the price of ten dollars. By the direction of Savage, the land was conveyed by E. W. Taylor, successor of the former sheriff, to A. M. Savage and M. M. Brien, by deed, bearing date 18th of August, 1852, and duly registered on the same day. Savage afterwards died and M. M. Brien, on the 22d of October, 1859, executed a deed of gift for his interest in the land, to the children of Savage; which does not appear to have been formally proved and registered, but as to the execution of which there is no controversy.
*537 In tbe meantime, on tlie 24tb of February, 1865, this bill was filed by Thos. C. Wroe and .his wife, Lucinda, formerly Lucinda Browning, against M. M. Brien, A. M. Savage, Cicero B. Duncan, and A. J. Duncan, to enjoin an action of ejectment, which had been brought by Brien and Savage, on the 30th of December, 1854, against J. M. White and others, to recover the dower interest, as well as other lands owned by Browning, at the time of his death. It is charged in the bill that, situated as it was, the dower interest was not the subject of levy and sale, and could not be sold by an execution at law; that the title bond of Browning had been lost or mislaid, or was in possession of Brien; that complainants are entitled to the land under an act of Assembly of this State; that Brien and Savage had fraudulently combined and confederated together, to defeat them of their just rights; had procured the execution of the sheriff’s deed, and had brought an action of ejectment for the recovery of the land, the prosecution of which complainants pray may be perpetually enjoined, &c.
To this bill, the defendants pleaded, first, that the one hundred acres had been sold, as aforesaid, at sheriff’s sale; and, second, that the remaining four hundred acres had been sold under a decree of the Chancery Court, at the suit and instance of Stephen H. Colmes, and purchased by one Malone; that more than two years had elapsed since the making of said sale, and the time of redemption had expired; and, that complainant had no title to said lands. Complainants filed a replication to said plea, and the defendants afterwards filed separate answers, the details of which it is unnecessary to state *538 here, as several of the points relied upon were obviated by the agreement set out in the bill of exceptions.
It further appears that S. Ií. Colmes filed a bill against Thos. C. Wroe and others, and that, on the 27th of March, 1855, a decree was pronounced in said cause, confirming a sale made therein, by the Master, and vesting the title to all of said lands in Thomas Malone, the purchaser, excepting the dower interest of the said Lucinda. By said decree, all the right, title, claim and interest of the heirs and executors of Thomas W. Duncan, deceased, and of Manson M. Brien, in said lands, were divested out of them and vested in Malone, to the extent of the interest purchased by him; and, in the said Lucinda, in fee, and to her sole, separate, and exclusive use, to the extent of the dower tract.
Without detailing intermediate proceedings, it may be stated that this cause was before this court, at a former term, and that a decree was pronounced therein, on the 7th of December, 1856, remanding it to the Chancery Court at Smithville, to the end that proper parties might be made and such proceedings had as might he necessary to the determination of the question, whether the property “of intestate Browning,” in the pleadings mentioned, did not escheat to the State.
A bill was, thereupon, filed, by Tim. H. Williams, Attorney General for the fourth circuit, in the name of the State, against all the parties in interest, and claiming that the lands, with the exception of the dower interest, had escheated to the State, and that the title thereto should be divested out of all the other parties. A decree was pronounced in that cause, 23rd of September, *539 1859, dismissing the bill; from which an appeal was prayed and granted; but the appeal having been abandoned, a final decree was pronounced therein on the 23d of March, 1860, by which the cause was stricken from the docket at the cost of the State.
After the death of Browning, and before the commencement of the suit by Colmes, an act was passed by the General Assembly of this State, on the 10th of January, 1850, c. 54, pp. 162, 163, by which it was declared that when any person should die thereafter, intestate, leaving no heirs at law, capable of inheriting real estate under the laws of Tennessee; but leaving a widow, then, and in that case, the widow shall be entitled in fee simple, to all the real estate of which her husband died, seized and possessed, but subject to the payment of his just debts, in the same way and to the same extent that real estate was then liable. By the second section of said act, it was declared that its provisions should “be extended to and embrace all cases in which persons may have heretofore died intestate, as mentioned in the first section of this act, as well as those who may hereafter die intestate, and for the recovery of such real estate, suits have not been brought, or if brought, have not yet been determined.” And it was directed, in section 3, of said act, that “in all cases in which any of the Attorneys General of this State may have brought suit for the recovery of any real or personal estate, which may have been es-cheated to the State, under the laws of this State,” &c., “the said Attorneys General, respectively, are hereby authorized and required to dismiss' such suits,” at the costs *540 and expenses of those who, “by the provisions of this act, take such estate.”
This act was, incidentally, noticed by this court in the case of Puckett v. The State, 4 Sneed, 359, 360, and its provisions were declared to apply only to widows who were living at the time of the passage of the act, and not to the heirs of a widow who had died previously; but it was not determined whether the - provisions of the first and second sections were subject to constitutional objections. The question, the consideration of which was thus waived, is supposed to arise upon that part of the act of 1827, chap. 64, sec. 1, which declares, among many other things, that “all escheats which shall hereafter accrue in this State, shall be appropriated to the encouragement and support of common schools forever,” as well, perhaps, as upon other statutes, and upon a clause in the Constitution of 1834, art. 11, sec. 10, declaring, among other things, that all “property of every description whatever, heretofore, by law, appropriated by the General Assembly of this State, for the use of common schools, and all such as shall hereafter be appropriated, shall remain a perpetual fund,” &c., for the support and encouragement of common schools, &c., and “no law shall be made authorizing said fund, or auy part thereof, to be diverted to any other use,” &c. But no question has been discussed before us as to the validity of the said act of 1850; and, as it was declared in Puckett v. The State, 1 Sneed, 358, that “upon the death of the owner of real estate, intestate, without heirs, the title vests, directly, in the State, by operation of law,” and not in the Board of Common *541 School Commissioners; and that, “if the property be adversely held, an action for its recovery can, alone, be maintained in the name of the State;” ' and, as the suit, brought by the State for the recovery of the lands involved in this litigation, was abandoned, we hold that, under and by virtue of the act of 1850, the title to the lands in the bill mentioned, was absolutely vested in Lucinda Browning, the widow of B. F. Browning — he not having disposed of the lands by his last will and testament, and having, as to them, died intestate. This would now, owing to the lapse of time, be most clearly the result, if any title were asserted, as it is not, in common schools.
The dower, which was allotted to the widow, out of said lands, was not the subject of levy and sale under an execution at law, and no title was vested in Brien and Savage by the sheriff’s deed of 19th of August, 1853, in consequence of the dower interest having been struck off to Savage, at the price of ten dollars, at the sheriff’s sale, on the 5th of February, 1849.
"Where the husband dies, seized and possessed in fee, of lands, and his widow is endowed' of them, there can be no question that her estate in dower is a legal estate which may be levied upon and sold for her own debt, under an execution at law, as well as any other legal estate. But where the husband, at the time of his death, has an equitable title, only, to the land, and the widow is endowed of the equitable estate, her dower, in such a case, is an equitable interest only, and can not be reached by execution at law. Ever since the case of Combs v. Young, 4 Yer., 218, it has been the settled law of this *542 State, that an equitable interest in land is not subject to execution.
A widow was not dowable, in this State, of an equitable estate, until the common law was changed, by legislative enactment in 1823: Baker v. Heiskell, 1 Cold., 642. She had no interest, therefore, which an execution at common law could reach, nor was her interest leviable under any of the provisions of the Code: 3026 to 3037.
The deed of 19th September, 1851, from C. B. Duncan executor, to M. M. Brien and A. M. Savage for 500 acres, more or less, is equally unavailing as a defense. In the answer of Brien, sworn to and filed 3d September, 1850, to Colmes’ bill, it was admitted, distinctly and explicitly, that he had no legal or equitable title to the land; that Browning had paid the purchase money; that he and Brien had agreed that the title should be made directly from Duncan to Browning, and that this -was prevented by Browning’s death. Moreover, Brien proposed in that answer to produce Duncan’s bond on the hearing, if required, and a letter from Duncan was filed as an answer, in which he admitted that Brien had paid him the purchase money, and stated that he had been willing ever since to make the title. Under these circumstances, if Browning had lived, he could have filed a bill successfully to compel a specific performance of the contract. His widow, standing in his shoes, had the same right, and the decree in Colmes’ case, of 27th March, 1861, vesting the title to 400 acres in Malone, and to 100 acres in Lucinda Rowe, was perfectly correct.
The Duncans, as well as Brien, were defendants to *543 that suit, and bound by tbe decree. The deed, therefore, of 19th September, 1861, from Duncan to Brien and Savage, was executed lis pendens, in violation of the solemn admissions in Brien’s ■ answer. Brien and Duncan bad actual, and Savage presumptive notice of the suit, and the deed was void. The answers to the twelve searching interrogatories propounded in the bill in this case, are vague and indefinite; the deed, ultimately made by Duncan, was merely a quit claim deed; and it does not appear from the record that the title bond from Brien to Duncan ever was filed; but it is needless to make any comment on the circumstances further than to observe that they place the correctness of the conclusion as to the invalidity of the deed to Brien and Savage, beyond any possible doubt.
In the progress of this cause, the deaths of complainants, Wroe and wife, and of the defendant A. M. Savage, were suggested and admitted, and the case was properly revived on both sides. It appears that, in the action of ejectment, Brien and Savage claim title to 4,000 acres of land granted to A. J. and Isaac Overall, on the 25th July, 1842, and by them conveyed to M. M. Brien by deed, bearing date 11th. October, 1844. How much of the 500 acres purchased of Duncan, is embraced in said grant and deed, does not appear? but let the title to the 100 acres be vested in fee in Elizabeth Garritson, and let the defendants be perpetually enjoined from prosecuting any suit at law or in equity for the recovery of the said 500 acres, more or less, or any part thereof.
*544 In all other respects, let the Chancellor’s decree be affirmed, save only that the costs of this cause, in this court, and the court below, shall be paid by the defendants, as also the costs of the action of ejectment.